Mr. Perritt, right? Yes, Your Honor. Thank you. Good morning. Good morning, Your Honors. Your Honor, if I could reserve four minutes for rebuttal time. Keep your eye on the clock. We'll try to help you. Thank you. Chief Presiding Judge Smith, may it please the Court. This is an appeal for the dismissal of claims against PricewaterhouseCoopers, pursuant to Section 11 of the Securities Act of 1933, in connection with conceded misrepresentations and errors in the historical financial statements of a company, Bloom Energy. I'm not sure they were errors. They were most definitely conceded as errors, Your Honor. They were amiss. If you amiss application of the principles involved with the leases involved, I would say that. Any revision of the financial statement, which is a misstatement, is Rather than you and I argue about that, let's go to something else. My understanding is that you were allowed to amend and you said you didn't want to amend. That is correct, Your Honor. And so if you don't win here, we're done? Yes, Your Honor. I mean, I don't think All right. I just wanted to make sure. Let me ask you a second question. Barring new evidence or a change in the law, potentially, but yes. Were the revisions made by BE required? Yes. Where? They were required under GAAP because they were a misapplication of GAAP. Where is that alleged in your complaint? They were alleged as the restatement is the correction of an error, Your Honor. Well, just a minute. Where in your complaint did you allege that these revisions were required? I looked all over to find it. If I may go back. If you can find it, tell me. In fact, the complaint says that the classification under GAAP depended on the judgment about the length of the useful life of the sold item. That's what your complaint says. Your Honor, that's the relevant fact is that the That's the fact you alleged. The fact we alleged is that Bloom Energy conceded that their accounting, that the leases entered did not meet the requirement for operating leases, and so their initial accounting was incorrect. Well, frankly, I didn't find any place where it was required, but I do find in your complaint that there was a classification under GAAP, and that had all to do with the judgment about the length of the useful life of the sold item. It requires the categorization. There are four categories, and if you meet any one of them, you cannot categorize the properties. But we're really arguing in this case about the length of the actual useful life of an energy server, right? Well, we're arguing the misrepresentation is the misrepresentation of revenue for the 12 months Well, I understand you're talking about revenue, but answer my question. Your idea about going to revenue is simply to avoid answering my question. The big question is if we had a difference in the length of the actual useful life of the energy server, that's going to make a difference in revenue. And so we're really arguing about then the length of the actual useful life of the server. That's what we're arguing about. Well, we're arguing about whether the revenue recognition was proper and whether financial statements were fairly stated. But you don't answer my question. It says it's right. Well, if I may just answer your question completely, because with respect. If you just answer it, I'll be glad. The question is the recognition of revenue, which in itself, in connection with this significant section of the Bloom Energy's business, depends upon the terms of the leases that are entered into with its financial partners. That is correct. Just as revenue of sales determines on the contracts of sale entered into with its customers, which drives revenue. Just as revenue in regards to, say, inventory depends upon the amount of those inventory. There are elements of judgment contained in almost every line of financial statements. And so that was also true in this case decided in Worlds of Wonder, a case that the district court completely ignored, even though it was cited to it, which involved incredibly complex accounting provisions. And those were found to be misrepresentations of fact, which gave rise for a claim under Section 11 against the auditors of those financial statements. We are asking this court to. If I read your complaint adequately, you seem to be saying that PWC was certifying every representation of Bloom Energy's financial statements. And if that's correct, then basically you make them guarantors as to everything, which turns the whole accounting world upside down, does it not? No, it doesn't, Your Honor, and let me explain why. First of all, don't forget, first of all, that's in the statute. That's a decision that Congress has made, a policy decision, that a public accounting firm which certifies and all financial statements in a registration statement are required to be certified. But it's a question of what they're – listen to me. It's a question of what they are certifying. Correct. And you seem to be saying that everything they say internally, that the accountants are guarantors. I think every accountant in the country, the hair would stand up on their heads. That's not what this section has been interpreted to mean, is it? It is. Yes, it is, Your Honor. But don't forget, it is guaranteed. They have a defense, which is if they take duties and will care, which this Court has interpreted and interpreted to mean complying with GAS, the General Accepted Auditing Standards, then they have no liability. So it is – all that is changing is that rather than having to prove it – rather than having a plaintiff trying to prove negligence, Congress in 1933 decided that that liability, that burden rested on the defendant accountant firm. So if they did their audit in accordance with professional standards, as they represented as the case in their audit opinion, then they have no liability here. So, no, they are not guarantors. That would be incorrect. However, it seems to me that based on your interpretation of the statute on which you are relying, that you want to make it more like 11a1 and 11a3 than what it is in 11a4. 11a4 has to do with the certification. 11a1 says every person who signed the registration statement is subject to the liability with no limitations. 11a3 says every person named in the statement as a director and a partner of the issuer is subject to the liability with no limitations as to scope. When I look at a4, it doesn't say it that way. It says it differently. And then if I look down at 11 U.S.C. 77KB3I, it's a totally different thing for what accountants have to do in their certification. Because 1177B3I says the auditor has a reasonable ground to believe and did believe at the time each part of the registration statement became effective, that the statements therein were true and that there was no omission to state of material fact required to be stated therein or necessary to make the statements therein not misleading. So it seems to me you're trying to make out of a4 a different thing than you want to make it like a1 and a3 in your argument here. With respect, I don't think that's a correct characterization of our argument. What the difference with a4 is, is that it is limited to the portion of the registration statement that is either prepared by or certified by the accountant.  And if it isn't prepared by or certified, and the only way you get here is because even you argue that they didn't prepare these statements. They certified these statements. And so then the district court went off on the idea that under Omnicare, this is an opinion and therefore you don't have a case. You've changed your argument now and you're saying the statute itself says what it says and Omnicare does not even have anything to do with it. Well, with respect, we were completely consistent with our argument before the district court and before this court. We have always, and it's in the complaint, is that the liability stems from the  The certification is of the financial statements, the balance sheet, income statement, statement of cash flows, and the notes there, too.  Those are subject to the opinion. That opinion under SEC rule in which defendants concede is a certification. So the statements that are certified by PricewaterhouseCoopers in that Bloom Energy registration statement are the December 31, 2017 financial statements, balance sheet, income statement. The balance sheet and that income statement contain, we allege, misrepresentations. And I think we properly allege misrepresentations. But the audit opinion specifically states that it is an opinion. So why doesn't Omnicare apply? Well, Omnicare would apply to an allegation that the statement, if we're alleging under Section 11, that the opinion that the financial statements of Bloom Energy are properly stated in accordance with GAAP was false. But we're not alleging a claim based on that. We never alleged a Section 11 claim on that. We alleged a Section 10b claim. That's not as part of this appeal. The relevant statement is what they certify, which is the statement in the financial statement, which was Bloom Energy's statement certified by PricewaterhouseCoopers. They argue, and the district court found, that the fact that the certification takes the form of, it's actually a statement of fact and a statement of opinion, but it contains a partial statement of opinion. Therefore, Omnicare applies to every aspect of PricewaterhouseCoopers' potential liability for misrepresentations in the financial statements. That is false. That is not what Omnicare says. I don't think that that's not a reasonable reading of Omnicare. Omnicare didn't involve accountants. Omnicare didn't involve this section of the Securities Act. Omnicare didn't involve financial statements. So that would be a radical departure and, again, completely contrary to this court's decision in Worlds of Wonder, which is still good law. With respect, the argument that you're making, has it found traction in any other circuit? It found traction in this circuit, in Worlds of Wonder. So in Worlds of Wonder, the auditor, which was Deloitte in that case, was the only party found for which the plaintiff could proceed for misrepresentations in the financial statements of the issue of Worlds of Wonder in that case. You may want to think about it. You said you wanted to save four minutes. It's up to you. I had a couple of questions I wanted to ask. Okay. Let me ask you, what did it do for Pricewaterhouse's audit opinion to classify the MSAs as operating leases instead of capital leases? Did it artificially inflate the value? So the effect is in the financial statements prepared by Bloom Energy that were audited and subject to the certification by PricewaterhouseCoopers adopting the Securities Act's terms. And the effect of the mischaracterization, the misapplication of GAAP, increased revenue, decreased net loss by, we allege, I think properly, a material amount under the by a material amount of the financial statements. That was an error. That was then included in the registration statement, and which gives rise to a cause of action. What information did Pricewaterhouse need that would have allowed it to determine whether the leases were capital or operating leases? Well, it would look at the terms of the leases which it had access to. But that's not the relevant inquiry because this is not there's no Sienta requirement in Section 11. So that is another issue with applying this overexpansive application of Omnicare. Omnicare applied to pure statements of opinion, pure statements of opinion, which were framed and understood to be pure statements of opinion. So they are framed as we believe, I think, et cetera. It did not apply to every statement contained that might contain some element of judgment. And I realize I'm running out of time. Was that information available to Pricewaterhouse when it prepared the audit? It should have been. But, again, I don't think it's not relevant because their state of mind is not relevant. But as part of their audit procedures, they absolutely would have access to the financial records of their audit client, Bloom Energy, here. Was classifying the MSAs in this situation as operating leases, was that done in accordance with GAS? With GAS or GAP? GAP or GAS. Well, I don't know whether their audit were complied with GAS. It is conceded by Bloom Energy and by PricewaterhouseCoopers that the categorization of the MSAs as operating leases was not in accordance with GAP.  Thanks. Very well. Save the balance of your time. Let's hear now from Mr. Rosenkranz. Good morning, Your Honors. May it please the Court. Josh Rosenkranz representing PWC. Your Honors, there are three issues in this case. Plaintiffs have the unenviable task of having to defeat all three. Let me start where Judge N.R. Smith started with the very first question, which is that these line items, as the district court found, depend upon supremely inherently subjective determinations and also — Speak up just a little bit. You're not — Oh, yes, sure. Thank you. And also that the district court found the issue to be forfeited. Now, to Judge N.R. Smith's point, just look at why plaintiffs are saying that the line item was wrong. It was a highly subjective projection of the useful life of a new generation of hardware that Bloom Energy had just revamped to increase its lifespan. Just look, if you look at no other page in the registration statement, look at page 117. It is the risk factors about that estimation. It emphasizes that an incorrect statement is a major risk factor. It says, quote, we do not have a long history with this product and our estimates may prove incorrect. It says, if our estimates of useful life for our energy servers are inaccurate, our business and financial results could be harmed. It notes that early generations of our server did not have the useful life we expected. That is supremely subjective. Now, this Court does not even have to address whether these line items were subjective or not or depended upon subjective judgments, because the district court correctly found that this whole argument was forfeited multiple times over. The district court pointed out that plaintiffs' opposition to the motion to dismiss never even cited the critical gap provision that they are now relying on. That's at 16. That is ASC 840-10251. That's where the 75 percent line comes from. Much less, the district court continued, did it, quote, explain why the application of this provision does not require an exercise of judgment. The district court also found that, quote, in the complaint. But it's in the complaint, right? That's 840-10251 gap provision. The complaint says that's a clear line. It's just that they didn't really argue that in the district court. That is correct. And not only that, they didn't even cite it in the opposition to the motion. That is correct, Your Honor. And saying it's in the complaint doesn't get them anywhere. That was their answer to our forfeiture argument. It doesn't get them anywhere if they don't mention it in the complaint. The district court also found that in the complaint, I'm quoting here at 17, quote, in the complaint, plaintiffs do not specify the economic life of an energy server. But that's the key input that goes into that 75 percent number. Now, let me turn to the second issue that we led with in our brief. Judge Malone-Smith's question goes right to the heart of the matter. Plaintiffs' reading of Section 11 is not just wrong. It turns the role of an auditor upside down. By the way, that's Judge Smith. It's Mylon Smith, not Malone. Go ahead. Oh, I'm so sorry, Your Honor. That's quite all right. Malone's a nice place. I should have said that. Well, not only that, Mylon is a good name. There you go. But I'm just telling you, I didn't want you to get that wrong again. He's the Smith. I'm just the yay-hoo. So keep going.  Thank you, Your Honor. Apologies. That's what I get for drawing two Smiths. Don't lose any sleep over it, okay? So as Your Honor pointed out, this turns the entire Section 11 scheme upside down. When an accountant certifies a financial statement, it does not just vouch for the accuracy of every line item. He expresses an opinion about the financial condition of the company as a whole. The accountant can be liable for that opinion and for any fact that the accountant embeds in the opinion. In what case do we have that says what that term certification really means? I mean, we have the certification is not defined by the Act. We have 17 CFR 230-405, which defines certification as examined and reported upon with an opinion expressed by an independent and certified public accountant. The SEC defines certified as examined and reported upon with an opinion, and the PCAOB says the auditor's responsibility is to express an opinion on the financial statements they audit. So what do we have besides Omnicare to apply to this certification? Well, Your Honor, first, those regulations are pretty important. One of them dates back that is in particular the one that defines certified. It dates back to the 17 CFR? Yes, but I'm actually talking about Regulation S.X. Okay. Which goes back to 1941. Right, right. It's identical. I mean, the wording is exactly the same. It goes back to 1941. The SEC understood what Congress meant when it used the word certified, and it defined it as examined and reported on in an opinion. Your Honor asks what cases interpret that. Arthur Young from the Supreme Court in 1984 says an auditor, quote, issues an opinion as to whether the corporation's financial statements taken as a whole fairly present the financial position of the company. And then more directly on this topic, there's Charles Schwab from the Northern District of California. There's ICON. I mean, the reason I ask you that question straightforward is we have a case that was done by Judge — I forget — Judge England. He doesn't seem to think that what certification means is the same as — it's the Special Situations Fund versus Marone BioInnovations. Yes, Your Honor. So that is plaintiff's only post-omnicare case.  It is just plain wrong. It says that a judge — it says that an auditor's job, when it certifies, is to confirm the accuracy. And as Your Honor said, that would turn the entire audit profession upside down. I would also add just — Doesn't the standard of care of what the auditor is doing and what he's certifying depend on what kind of audit he's doing? Not really, Your Honor. I mean, I'm sorry. Let me say it this way. Yes, what the auditor does is to exercise judgment that may vary from one audit to the next. But the basic definition — Well, there are different levels of auditing, though, aren't there? Yes. Where they actually go in and check the inventory and make sure what they're claiming is there is there. So it isn't the type of audit. Doesn't that have some bearing on what the standard of care would be for the auditor? I think — so the type of audit could have a bearing. But here, this is just the standard audit with an audit letter that is prescribed by the PCAOB. And Judge Smith read from PCAOB regulations. Some of them say very clearly that the division of labor is between the management which prepares the statement and the auditor which certifies the statement with an opinion and says that the auditor could not possibly provide anything more than reasonable assurance, which is what the opinion says the auditor provides, cannot possibly provide absolute assurance. I gather your position is if you look at the risk factor that you referred to when you first spoke, it makes very clear that the useful life of this relatively new asset makes a — it's a big deal. That's right in the risk factors. And whatever the auditor said here would, of course, include that by definition, which means they cannot possibly be saying that we guarantee that it has a useful life of X because the company itself has already said this is what we think it is. But if we're wrong, it's going to make a difference. Is that right? That's absolutely right, Your Honor, as to the subjectivity of the line items. But it also makes — Let's go further. Isn't it the company who decides this? Yes. And the auditor is just coming through to make sure that what the company decided, they making the decision as to the useful life and as to how it ought to be classified is not against general accounting practices and is a reasonable financial estimation of what's done, even if it could be done some other way. That's all they're doing, isn't it? Yes, Your Honor. And this makes a very important point about 11A.4 and that division of labor. Think about what plaintiffs are saying an auditor has to do. The auditor doesn't run the business. It has no idea what — no independent notion of what the useful estimated life of a piece of hardware is that's never even lasted 15 years because it's a brand-new generation. All the accountant does and all it can do is provide the reasonable assurances about the financial condition. Auditors do not perform. They don't even redo the gap calculation. All they do after the issuer prepares those initial gap determinations and finalizes them in a financial statement is they conduct testing and sampling to verify, as Your Honor just said, that there is a reasonable estimation here, a reasonable assurance that this adequately represents the financial condition of the company. Let me ask you this. Are there circumstances where accountants could be found liable under Section 11 for portions of registration statements that they audited? Yes. Can you give us an example of when that might occur? Yes, Your Honor. There's plenty of liability for accountants. Example number one, increasingly these days after regulations that were passed by PCOB in 2019, auditors have to put in what are called CAMs, which are critical audit matters. They recite — they're just full of facts about how the company accounted for difficult or highly subjective determinations and what the auditor did in order to test or sample on those propositions. That is the main example of where — And isn't that exactly what happened here? Because the sale leaseback arrangements accounting was put right in the statement. The sale was subject to operating leases done this way in 2016 and 17, but it said that the arrangement could be accounted for as a capital lease instead of an operating lease, right in the statement. Right in the statement. So it achieved exactly what a financial statement is designed to achieve. It identified the risk. It explained what the calculation was. It explained the effect of a wrong conclusion on that calculation. And on the same page that I believe Your Honor is looking at, it also cites the relevant ASC, which is 840. 840. One last word, Your Honors, on Worlds of Wonder. The only issue in Worlds of Wonder — that's the Ninth Circuit case that plaintiffs are emphasizing — was whether the district court properly granted summary judgment to the accountant on loss causation. The court did not decide anything about the legal effect of a certification under Section 11A. Let me just close with this. As is evident from the course of this litigation, this sprawling case was never really about PwC. The case predated these revisions. The reclassification had a far greater impact on the years that PwC did not audit as part of the registration statement. The operative complaint, as we've discussed, barely mentions PwC. And when it does, it just jumbles PwC in with, quote, unquote, Section 11 defendants. Plaintiffs did not care enough about PwC to even mention their novel 11A4 theory in their complaint or to spell out why classification was objective or why the revisions were material, an issue that we did not talk about today. And then when given the chance to amend the complaint as to PwC, plaintiffs declined saying that it would be, quote, futile. Plaintiffs got their pound of flesh in connection with the far more significant allegations. It's time to put this straggling remnant to rest. If there are no further questions, we respect that. We request that the Court affirm. Thank you, Your Honor. Thank you. Mr. Puritt, you have a little time. Thank you, Your Honor. And I'll just, very quickly, the question of waiver, which I think was, we strongly disagree with respect to the District Court's decision on that. Let me just, what's sticking in my mind is the risk factor. How do you deal with that? I mean, the risk factor. Right at the very beginning, it says, if we're wrong about this, it's going to make a big difference. Doesn't that overlay anything that you would be saying? Well, I mean, that's not really, that wasn't an issue in the District Court. That's really not, that would be determining that this issue was, that's really a question of going to the materiality. It speaks caution. Risk factors, there is no safe harbor under the PSLRA for an IPO. You're saying that they've certified the financial statements and the risk factor is clearly included, is it not? I don't think the risk factors are included in the financial statements. The audited opinion applies to the financial statements and the notes to the financial statements, which the risk factors aren't a part of. So you may want to argue that there would be a fact-based argument as to whether after the restatement was announced, how a reasonable investor would interpret that correction of the error in light of the risk factor. That's a very fact-intensive inquiry that you would need proper evidence on. As we pleaded, my friend just said that we didn't plead materiality in the  That's incorrect. We pleaded, and we pleaded in the complaint, the decline in the stock price immediately following the announcements of these restatements, and there was a material, you know, significant 20% decline in the stock price, which is evidence of the materiality of the statements that were restated. So I don't think risk factors are not dispositive here, Your Honor. No, it certainly wasn't. That was not the basis for the district court's opinion, which is the reason why we did not amend, because he felt that the district court held that this was a matter of an opinion, and we felt strongly that it was a matter of fact. Your time is up. Let me ask my colleagues whether either has additional questions. I think not. So we thank all counsel for your argument in this case. The case of Hunt v. Price Waterhouse Coopers is submitted.
judges: SMITH, SMITH, Rayes